198 P.3d 128

STATE of Idaho, Plaintiff–Respondent,

v.

Eddy Max GRANTHAM, Defendant–Appellant.

No. 32657.

Court of Appeals of Idaho.

Oct. 30, 2008.

Bugbee Law Office, Spokane, Washington, for appellant. Christopher A. Bugbee argued.

Hon. Lawrence G. Wasden, Attorney General; Daniel Bower, Deputy Attorney General, Boise, for respondent. Daniel Bower argued.

GUTIERREZ, Chief Judge.

Eddy Max Grantham appeals from his judgment of conviction for trafficking in a controlled substance, methamphetamine. He argues that several errors occurred below, including the denial of his motion to suppress evidence and the denial of his motion for a mistrial. He also contends that prosecutorial misconduct occurred during the trial and that the court erred by giving an erroneous jury instruction. He asserts that these errors, individually and cumulatively, necessitate reversal. We affirm.

## I.

## BACKGROUND

On January 13, 2005, Grantham was a passenger in an Isuzu pickup truck traveling north on Highway 95 in Northern Idaho. The driver, Shelby R. Wilkes, swerved three feet over the fog line and back again, arousing the suspicion of Bonner County Sheriff's Deputy Mark Strangio that she may have been driving under the influence (DUI). Deputy Strangio stopped the pickup and contacted Wilkes through the open passenger-side window. Wilkes admitted to not possessing a driver's license, but handed Deputy Strangio proof of registration. She was unable to locate insurance information for the vehicle, and did not know the name of the owner of the pickup. Wilkes informed Deputy Strangio that she had a valid identification card through Montana, which he verified through dispatch. While confirming Wilkes' identity, Deputy Strangio asked her to step out of the vehicle and accompany him back to his patrol car. Grantham remained in the pickup. Deputy Strangio asked Wilkes where she was coming from, where she was traveling to, and the purpose of her trip. Wilkes appeared nervous while answering these questions, keeping her eyes averted and kicking at the ground. She informed Deputy Strangio that she had been to Spokane to drop her children off with her ex-boyfriend and she was returning home to Libby, Montana. She stated that she and Grantham were old friends, and she was giving him a ride to Libby as well. Deputy Strangio felt that Wilkes was stalling, and observed that she couldn't stand still; she was continually pacing and turning her back to the officer. Deputy Strangio further observed that the truck was "ratty" and that both Wilkes and Grantham appeared unkempt, disheveled, gaunt, filthy, and had pock marks or lesions on their faces.

Deputy Strangio also spoke with Grantham, asking him about his destination and the purpose of the trip. Grantham informed Deputy Strangio that he was a student in Spokane and was returning to Libby. He stated that he has known Wilkes since she was five years old. Although Wilkes could not name the registered owner of the Isuzu, Grantham correctly identified the owner as John. Even though Deputy Strangio felt Grantham's answers were vague, he allowed Grantham to remain in the truck and began to issue a citation to Wilkes for failure to purchase a driver's license. He again asked Wilkes about the purpose of her trip, and this time she responded that she was visiting her children in Spokane and was on her way home to Libby. His suspicions aroused, Deputy Strangio asked dispatch to contact Lincoln County, Montana, for information on Wilkes and Grantham. Dispatch reported back that the two were suspected of drug activity.

Based on the inconsistency in Wilkes' story, the appearances of Wilkes and Grantham, and their behavior while answering questions, Deputy Strangio requested a drug-detection dog be dispatched to his location. Sergeant James Cotter arrived a few minutes later with his drug dog, Sadie. Deputy Strangio completed the citation and handed it to Wilkes along with the registration for the truck. He then asked her if she had any marijuana in the car. She made eye-contact with him and denied having marijuana. Deputy Strangio asked about methamphetamine. Wilkes turned away, avoided eye contact and did not answer. When Deputy Strangio asked about cocaine, heroin, firearms, or large sums of money, Wilkes again responded in the negative. When Deputy Strangio requested permission to search the vehicle for drugs and firearms, Wilkes refused. During this process, Sergeant Cotter and Sadie performed an exterior search of the pickup truck. Sadie alerted on both the driver's side door and the passenger side door. Grantham was asked to exit the vehicle. Once inside the truck, Sadie alerted on a grey duffel bag behind the passenger seat and a blue backpack between the driver's and passenger's seats.

A subsequent hand-search of the backpack and the duffel bag revealed drugs, paraphernalia, and identifying clothing and paperwork. A camera case located next to the duffel bag was also searched and found to contain drugs and more paraphernalia, including five syringes, a lighter, spoons and cotton swabs. Wilkes and Grantham were arrested for trafficking in a controlled substance, methamphetamine, Idaho Code Section 37–2732B. Prior to trial, Grantham moved to suppress the evidence discovered in the car, alleging that Deputy Strangio unreasonably delayed the length of the stop. Grantham asserted that Deputy Strangio lacked a reasonably articulable suspicion to extend the traffic stop from a DUI investigation into a search for drugs. The district court denied the motion, and Grantham proceeded to a jury trial.

Law enforcement officers in Libby obtained a warrant to search Grantham's home after they were informed of his arrest in Idaho. Prior to trial, Grantham's attorney and the state prosecutor stipulated that although they might discuss the search of Grantham's home in Libby, they would not mention the methamphetamine discovered there. Detective Height from the Lincoln County, Montana Sheriff's Office testified at trial that there was a search of Grantham's home in Libby. Detective Height identified baggies that were discovered in Grantham's home, which were admitted into evidence. At the close of Detective Height's brief testimony, the jury was permitted to submit written questions for the witness. After reviewing the single question submitted, the district court gave it to counsel to allow for any written objections. The question was whether controlled substances were found during the search. The prosecutor indicated that he had no objection, while defense counsel's notation was ambiguous. Defense counsel wrote "objection (no)." Defense counsel intended to object to the question, indicating first that he had an objection, and then in parenthesis noting that the question should not be asked. The court, however, did not read the notation that way. The district court asked the question, to which defense counsel immediately objected, although Detective Height answered affirmatively in spite of the objection.

Grantham moved for a mistrial, citing the prosecution's abandonment of the stipulation not to discuss the drugs in Montana, and because counsel's ambiguous notation could be construed as ineffective assistance of counsel. The court refused to declare a mistrial, and instead instructed the jury that the court should not have allowed the question; the answer was stricken from the record, and the jury was instructed to disregard it.

Grantham was the only witness to testify for the defense. During his direct examination, he testified that he used methamphetamine recreationally, but he only smoked or snorted it. He denied ever injecting it, despite the prior testimony of Wilkes that she saw him inject it the morning of their arrest. Grantham also testified that he was a volunteer E.M.T. in Libby for seven or eight years. Jurors were again allowed to submit written questions for the witness. One of the

questions was whether Grantham knew how to give himself an injection. Over counsel's objection, the court allowed the question. Grantham denied ever knowing how to give an injection. On subsequent cross examination, the prosecutor inquired about Grantham's training as an E.M.T. Grantham denied receiving any training on how to give an injection. The prosecutor asked Grantham if he would have any marks on his inner arm from injections, to which Grantham responded that he would not. The prosecutor then asked Grantham to display his inner arms. Defense counsel informed the court that there would be no objection. The prosecutor, Deputy Strangio, and defense counsel all approached Grantham as he showed his inner arms. Defense counsel then requested that Grantham be allowed to show the jurors his inner arms, and he was allowed to walk along the jury box with his arms exposed. The prosecutor then questioned Grantham on small marks and bruises on his arms, although Grantham denied the marks were from injections.

Prior to closing arguments, the court heard objections from counsel regarding jury instructions. In particular, Grantham's attorney objected to Instruction 22, which stated that "There are no issues for the jury involving the legality of any search of any person, object, or place, and no issue of the legality of any arrest of any person." The court denied the objection, and proceeded to instruct the jury. Grantham was found guilty of possession of methamphetamine in excess of 28 grams. He was convicted of trafficking in a controlled substance, methamphetamine. This appeal followed.

## II.

### DISCUSSION

Grantham asserts several errors below, including the denial of his motion to suppress evidence, the denial of his motion for mistrial, prosecutorial misconduct, and the inclusion of Jury Instruction 22. He also alleges that even if none of those errors merit reversal of his judgment of conviction individually, the errors combined deprived him of a fair trial. We will address each issue in turn.

### A. Denial of Grantham's Motion to Suppress Evidence

Grantham moved to suppress the evidence obtained in the search of the Isuzu pickup truck on the grounds that Deputy Strangio unlawfully extended the duration of the traffic stop. Grantham concedes that the initial traffic stop was valid. On appeal, Grantham asserts that Deputy Strangio lacked a reasonable and articulable suspicion that Grantham and Wilkes were engaged in criminal activity, and therefore the extension of the traffic stop to investigate possible drug possession was unlawful. Specifically, Grantham urges that the use of a "methamphetamine-user profile" was insufficient to support the extension of the traffic stop.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures. *State v. Ramirez,* 145 Idaho 886, 888, 187 P.3d 1261, 1263 (Ct.App. 2008); *State v. Salois,* 144 Idaho 344, 347, 160 P.3d 1279, 1282 (Ct.App.2007); *State v. Cerino,* 141 Idaho 736, 737, 117 P.3d 876, 877 (Ct.App.2005). Its purpose is "to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to 'safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979)

(quoting *Marshall v. Barlows, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305, 311 (1978)). The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to Fourth Amendment restraints. *Prouse* at 653, 99 S.Ct. at 1396, 59 L.Ed.2d at 667; *Ramirez,* 145 Idaho at 888, 187 P.3d at 1263; *State v. Roark,* 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct.App.2004); *State v. Robertson,* 134 Idaho 180, 184, 997 P.2d 641, 645 (Ct.App.2000); *State v. Flowers,* 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App.1998); *State v. Sevy,* 129 Idaho 613, 614–15, 930 P.2d 1358, 1359–60 (Ct.App.1997); *Atkinson,* 128 Idaho at 561, 916 P.2d at 1286. Although a vehicle stop is limited in magnitude compared to other types of seizures, it is nonetheless a "constitutionally cognizable" intrusion and therefore may not be conducted "at the unbridled discretion of law enforcement officials." *Prouse,* 440 U.S. at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672. Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Prouse,* 440 U.S. at 653, 99 S.Ct. at 1396, 59 L.Ed.2d at 667; *State v. Stewart,* 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct.App.2008).

An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Ramirez,* 145 Idaho at 889, 187 P.3d at 1264; *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct.App.2004); *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App. 2002). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1574–76, 84 L.Ed.2d 605, 614–15 (1985); *State v. Soukharith,* 253 Neb. 310, 570 N.W.2d 344, 355 (1997). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson,* 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App.2000). The scope of the intrusion permitted will vary to some

extent with the particular facts and circumstances of each case. *Ramirez,* 145 Idaho at 889, 187 P.3d at 1264. However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe,* 140 Idaho at 181, 90 P.3d at 931. Any routine traffic stop might turn up suspicious circumstances that could justify an officer asking further questions unrelated to the stop. *State v. Brumfield,* 136 Idaho 913, 916, 42 P.3d 706, 709 (Ct.App.2001); *State v. Myers,* 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990). The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *Id.* Accordingly, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.*

Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose. *Parkinson,* 135 Idaho at 363, 17 P.3d at 307. During the course of a lawful traffic stop, general questioning on topics unrelated to the purpose of the stop is permissible as long as it does not expand the duration of the stop. *Ramirez,* 145 Idaho at 889, 187 P.3d at 1264; *Stewart,* 145 Idaho at 646–47, 181 P.3d at 1254–55; *see also Muehler v. Mena,* 544 U.S. 93, 101, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299, 309 (2005); *Parkinson,* 135 Idaho at 363, 17 P.3d at 307. Brief, general questions about drugs and weapons, in and of themselves, do not extend an otherwise lawful detention. *Parkinson,* 135 Idaho at 362–63, 17 P.3d at 306–07; *see also United States v. Yang,* 345 F.3d 650, 654 (8th Cir. 2003); *State v. Aguirre,* 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct.App.2005).

Grantham asserts that Deputy Strangio impermissibly based his suspicion on a profile of a drug-user, and therefore the stop was unlawfully extended in both dura-

tion and scope. Grantham cites to *Brumfield*, 136 Idaho 913, 42 P.3d 706, for the proposition that "[r]eliance on profiling is not legitimate grounds for suspicion." However, Grantham fails to recognize that the majority's holding did not support such a proposition, and it was in fact the dissenting opinion of Judge Schwartzman that criticized the use of alleged profiling in that case. Profiling is the informal use of predominantly innocent behaviors and characteristics to predict criminal behavior when observed together. *See, e.g., Florida v. Royer*, 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229, 233 n. 2 (1983) (listing age, casual manner of dress, brand of luggage, nervousness, and purchasing airline ticket with cash as typical drug courier characteristics); *Reid v. Georgia*, 448 U.S. 438, 440–41, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894 (1980) (observing man's arrival in the early morning, from a drug city, without luggage, and distancing himself from an obvious traveling companion as profile characteristics); *United States v. Carrizoza–Gaxiola*, 523 F.2d 239, 241 (9th Cir.1975) (applying profile based on the driver's apparent race, direction of travel, model of car driven, and presence of foreign license plates); *People v. Perez*, 852 P.2d 1297, 1300 (Colo.Ct.App.1992) (identifying a drug courier profiled based on paying for plane tickets with cash, traveling to "source cities" and arriving shortly before departure); *State v. Sugg*, 61 N.C.App. 106, 300 S.E.2d 248, 251 (1983) (using profile to stop a man because he was carrying a particular brand of luggage, was the first person to leave the airplane, and appeared extremely nervous); *State v. Victor*, 76 Ohio App.3d 372, 601 N.E.2d 648, 650 (1991) (relying on street-corner drug vendor profile to investigate person for leaning into a stopped car at a corner where drug transactions were known to transpire).

Deputy Strangio did not use a "profile" in this case either as the basis for the traffic stop or to continue his investigation. Rather, Deputy Strangio observed the pickup truck swerve significantly over the fog line, arousing his suspicion that the driver was under the influence of alcohol or drugs, and then observed direct evidence of drug use by both Wilkes and Grantham. They appeared disheveled and unkempt, had pock-marked skin, were gaunt or underweight, and had missing or rotted-out teeth, characteristics which cumulatively are evidence of extended methamphetamine use. After speaking with Wilkes and Grantham, Deputy Strangio learned that neither of the truck's occupants owned the vehicle, that Wilkes did not know the name of the owner, and that Grantham knew the owner by first-name only. Wilkes was excessively nervous while speaking with Deputy Strangio, and unable to stop moving, which is also indicative of being under the influence of methamphetamine. Furthermore, Wilkes' demeanor changed visibly when asked whether there was methamphetamine in the car as compared to other drugs. While each of these reasons alone could appear innocent, all of Deputy Strangio's observations considered together, and including his training and experience, give rise to reasonable suspicion sufficient to expand the scope of the traffic stop. *See, e.g., Brumfield*, 136 Idaho at 917, 42 P.3d at 710. Seeking information from the Lincoln County, Montana, Sheriff's Office, which informed that Wilkes and Grantham were suspected of being involved with drug activity, and requesting a drug dog to search the exterior of the pickup truck were both reasonable methods for verifying Deputy Strangio's suspicion that Grantham and Wilkes possessed methamphetamine. Deputy Strangio was not using a profile when he expanded the scope of the traffic stop; the extension was based on direct evidence of methamphetamine use which gave rise to reasonable suspicion of drug possession. The district court did not err by denying Grantham's motion to suppress.

### B. Denial of Grantham's Motion for Mistrial

 Grantham next asserts that the district court erred by denying his motion for a mistrial following Detective Height's affirmative answer to a juror's question regarding the discovery of drugs inside Grantham's Montana residence. In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A "mistrial may be declared upon motion of the defendant, when

there occurs during the trial an error or legal defect in the proceedings or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983). The threshold inquiry is whether the state introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct.App.1993). The right to due process does not guarantee a defendant an error-free trial, but rather a fair one. *Id.* at 58, 855 P.2d at 895. Consequently, error is not reversible unless it is shown to be prejudicial. *Id.*

Grantham argues that it was error for the court to allow the question to be asked, and that it was also error for the state to fail to object to the asking of the question. Grantham asserts that the admission that controlled substances were found in his house in Montana was evidence of a prior bad act, impermissible under Idaho Rule of Evidence 403 or 404(b), and that since the question was asked by a juror, the answer would be impossible to ignore, despite the

court's curative instruction. There was no ruling from the district court as to whether the evidence would have been admissible at trial due to the parties' stipulation not to discuss it. Assuming, without deciding, that allowing the question to be asked and answered was error because it violated the parties' agreement, we turn to whether this constitutes reversible error.

The admission of improper evidence does not automatically require the declaration of a mistrial. *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct.App. 2004); *State v. Rose*, 125 Idaho 266, 269, 869 P.2d 583, 586 (Ct.App.1994). Where improper testimony is inadvertently introduced into a trial and the trial court promptly instructs the jury to disregard such evidence, it is ordinarily presumed that the jury obeyed the court's instruction entirely. *Hill*, 140 Idaho at 631, 97 P.3d at 1020. We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant. *Id.; see also Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618, 630 n. 8 (1987). An error is harmless, rather than reversible, when the reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *State v. Barcella*, 135 Idaho 191, 197, 16 P.3d 288, 294 (Ct.App. 2000).

Following Grantham's objection to the juror question, the district court excused the jury from the courtroom and held a prolonged discussion with counsel for both sides on the record. After the court denied Grantham's motion for mistrial, the district court ordered the answer stricken from the record, instructing the jury to disregard the question and answer entirely.[1] Without belaboring

---

1. Grantham argues that the presumption a jury follows an instruction to cure an evidentiary error should not be followed when "it is likely that the adverse effect of the improper testimony might not be eradicated by the instruction."

*State v. Martinez*, 136 Idaho 521, 526, 37 P.3d 18, 23 (Ct.App.2001). This is a much lower standard to meet than that enunciated in *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct.App.2004), and applied above. However,

the point, the district court explained that the question should not have been asked and that the answer had no bearing on the issues before the jury. We conclude this is not a case where the jury would be incapable of following the court's instruction to disregard the answer, or where the evidence would be devastating to the defendant. While Detective Height responded affirmatively on the question of whether controlled substances were found, he did not state what kind of controlled substance was found, where it was found, or how much was found. Wilkes, on the other hand, testified that the grey duffel bag and the camera bag both belonged to Grantham and that she saw Grantham inject himself with methamphetamine the morning of their arrest. She further testified that the methamphetamine discovered in her backpack was taken from the larger quantity in Grantham's bag without his permission or knowledge. Grantham testified that he used methamphetamine, had done so for several years, and had caught his daughter, who lived in his house, using it as well. Despite the fact that Grantham denied ownership of either bag, his cell phone records and a cell phone were discovered inside the duffel bag. Baggies similar to the ones in the duffel bag were found in Grantham's home in Montana. This Court is convinced beyond a reasonable doubt that the jury would have reached the same verdict without the admission of the challenged evidence. Therefore, assuming it was error, such error was harmless, and the district court did not err by denying Grantham's motion for declaration of a mistrial.

## C. Prosecutorial Misconduct

 Grantham's third assertion of error is that the prosecutor committed misconduct by asking Grantham about marks or imperfections on his inner arms during cross-examination to "prove" whether he had injection marks. Grantham did not object to these questions. The state argues that Grantham's behavior makes this a situation of invited error, an argument that we find

unpersuasive. Although Grantham did not object to the questioning, his failure to object did not induce error by the prosecutor. *See State v. Atkinson,* 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993).

 While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he is nevertheless expected and required to be fair. *State v. Field,* 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Fundamental error is an error that goes to the foundation or basis of a defendant's rights. *See State v. Christiansen,* 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007). However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field,* 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *State v. Pecor,* 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct.App.1998).

 Grantham asserts that it was misconduct for the prosecutor to ask questions about perceived blemishes on his skin, because it falsely implied that these were needle marks. The state contends that the questions were relevant to explain contradictory evidence already presented to the jury. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Idaho Rules of Evidence 401. "All relevant evi-

---

even if we were to follow this lesser standard, the presumption would still apply. The testimony presented, that drugs were found in Grantham's home in Montana which he shared with other people, was brief, and was of relatively minor

consequence when compared to all of the evidence presented against Grantham. It was unlikely that any adverse effect of the purportedly improper testimony remained after the district court instructed the jury to disregard it.

dence is admissible except as otherwise provided" by the Rules of Evidence. I.R.E. 402. There is no rule excluding the admission of this evidence; therefore it is admissible if it is determined to be relevant.

In this case, Grantham's defense was that the bags containing the methamphetamine and assorted paraphernalia were not his. Wilkes was the state's star witness. She not only testified that the bags both belonged to Grantham, including all of the contents, but she also testified that she saw him inject himself with methamphetamine the morning of their arrest. Grantham challenged this testimony by testifying that he never injects himself but only smokes or snorts methamphetamine. He also denied ever seeing the bags before. He therefore challenged the credibility of Wilkes' testimony. Whether or not Grantham had injection marks on his arms tended to support or negate the veracity of Wilkes' testimony, making it more or less probable that Grantham did possess the grey duffel bag and the black camera case and the drugs inside the bags. Several syringes were found inside the camera case, and Wilkes' testimony that Grantham injected methamphetamine was relevant to show possession. Grantham's contradictory testimony made the appearance of his inner arms material to the issue of possession. Thus, the prosecutor's subsequent questions as to flaws in his skin were both relevant and admissible. It is not misconduct to elicit relevant and admissible evidence; therefore there was no prosecutorial misconduct.

### D. Erroneous Jury Instruction

 Grantham's fourth assertion of error is that the jury was given an erroneous instruction. Grantham objected to Instruction 22, which stated that "There are no issues for the jury involving the legality of any search of any person, object, or place, and no issue of the legality of any arrest of any person."[2] Grantham objected to this instruction because it could be seen as judicial commentary on the evidence. Part of Grantham's trial strategy was to question the

procedures used in the search and to cast doubt on the conclusions of the officers. Grantham failed to cite any authority to support his argument in his opening brief as required by Idaho Appellate Rule 35(a)(6). A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Due to Grantham's failure to provide authority to support his arguments, this Court will not consider the issue further.

### E. Cumulative Error

 Grantham's final argument on appeal is that the combination of errors in the trial shows the absence of a fair trial, and therefore a new trial is necessary. The cumulative error doctrine requires reversal of a conviction where there is an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, the errors show the absence of a fair trial, in contravention of the defendant's right to due process. *Field,* 144 Idaho at 573, 165 P.3d at 287; *State v. Sheahan,* 139 Idaho 267, 286, 77 P.3d 956, 975 (2003). In order to find cumulate error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *Sheahan,* 139 Idaho at 286 77 P.3d at 975; *State v. Hawkins,* 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct.App.1998). Grantham's claimed errors were not found to have merit in this case. Therefore the cumulative error doctrine cannot apply.

### III.

### CONCLUSION

The district court did not err by denying Grantham's motion to suppress. Deputy Strangio articulated reasonable suspicion to investigate a potential drug crime based on all of his observations and training. If the district court erred by asking the juror question of whether drugs were discovered in Grantham's Montana residence, that error was harmless, and the district court did not

---

**2.** This is not an instruction that has been approved by the Idaho Supreme Court as part of the pattern Idaho Criminal Jury Instructions.

err by denying the motion for a mistrial. There was no prosecutorial misconduct in the state's questioning Grantham about his inner arms, as the appearance of his arms was relevant to a material issue in the trial and admissible. This Court will not consider Grantham's assertion of an erroneous jury instruction, as Grantham failed to support his argument with authority. Finally, the cumulative error doctrine does not apply to this case, as Grantham did not show multiple errors at trial. The judgment of conviction is affirmed.

Judge LANSING and Judge PERRY Concur.