**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 41513/41607**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Unpublished Opinion No. 849** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: December 8, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SHIRLEY MARIE STONE-JONES,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Lee Hansen; Hon. Michael E. Wetherell, District Judges.

Judgments of conviction and sentences for possession of methamphetamine with the intent to deliver, a habitual drug offender enhancement, possession of methamphetamine, and forgery, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

In two cases consolidated on appeal, Shirley Marie Stone-Jones appeals from her judgments of conviction and sentences for possession of methamphetamine with the intent to deliver and a habitual drug offender enhancement (Docket No. 41513) and possession of methamphetamine and forgery (Docket No. 41607). Specifically, she contends the district court erred by denying her motion to suppress in Docket No. 41513 and that the district courts in both cases imposed excessive sentences. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In regard to Docket No. 41513, the district court set forth the relevant facts below which Stone-Jones does not dispute:

On May 2, 2012, Defendant was a passenger in a black Chevy Blazer that was the subject of a traffic stop in Boise, Idaho. Based upon information from a Valley County deputy sheriff as well as a tip, Boise City Police officers had observed Defendant and the Blazer involved in suspected drug activity that evening at the Home Depot and Shari's parking lot in Meridian, Idaho. While following the vehicle after it had exited the parking lot and had briefly stopped at a residence, Officer Terry Phillips observed two traffic infractions for failure to signal and one traffic infraction for the vehicle's failure to maintain its lane. Officer Phillips conveyed this information to Officer Jim Cromwell, who joined and began to follow the vehicle as well. Officer Kelly Montoya was also close behind, with his controlled substance detection canine, Jax.

At approximately 11:25 p.m., a traffic stop of the vehicle was initiated near 13th Street, at the end of the inbound connector in Boise, Idaho. Upon contacting the driver, Officer Cromwell noted that the driver's hands and head were shaking, and that although the temperature that night was only in the 50's, the driver had beads of sweat on his forehead. Based upon the information known to the officers, including the driver's physical appearance and demeanor and the driving pattern the officers had observed, Officer Robert Gibson from the Boise City Police Department's DUI investigation team was called to the scene. While waiting for Officer Gibson to arrive, Officer Montoya had Jax perform an exterior sniff of the vehicle. Jax alerted twice on the left front bumper area, but no controlled substances were located inside the vehicle.

The driver and Defendant had been asked to exit the vehicle, and Defendant kept her purse with her as she did so. Officer Gibson arrived and conducted his DUI investigation of the driver. After performing several field sobriety tests, Officer Gibson concluded that no further testing was needed and had the driver sit on a curb away from the vehicle. At about the same time, Officer Cromwell asked Defendant to step away from the curb area so that he could speak to her. Due to the size and apparent weight of Defendant's purse, Officer Cromwell was concerned that the purse might contain a weapon. Officer Cromwell stated that Defendant could either leave her purse there, or she could bring the purse with her after Officer Cromwell checked the purse to make sure it did not contain any weapons. Defendant told the driver to "babysit" her purse, and she and Officer Cromwell moved about 25 feet away from that area in order to speak further.

As Officer Cromwell was speaking to Defendant, Officer Montoya had Jax perform an "area sniff." Jax alerted on Defendant's purse, which was sitting on the ground. Defendant saw this occurring and became upset about the dog being on her purse. Officer Cromwell asked Defendant for her consent to search the purse, and Defendant declined. Officer Cromwell contacted his supervisor, who advised Officer Cromwell to seize the purse and obtain a search warrant. Officer Cromwell explained to Defendant that she could either consent to the search of her purse, or the officers would seize the purse and obtain a search warrant. There was some discussion as to how long this would take and when Defendant could get her purse back, and Defendant ultimately told Officer

2

> Cromwell to "just take it." At that point, Officer Cromwell informed Defendant that she and the driver were free to go.
>
> Officer Cromwell seized Defendant's purse, booked the purse into the Ada County property room, and applied for a search warrant to search the purse. After obtaining a search warrant, Officer Cromwell searched Defendant's purse, which contained four baggies containing a white crystal substance, some spoons, scales, cell phones, and some money. The white crystal substance tested presumptive positive for methamphetamine.

(internal citation omitted).

Stone-Jones was charged with possession of methamphetamine with the intent to deliver, possession of drug paraphernalia, and a habitual drug offender enhancement. Stone-Jones filed a motion to suppress, arguing, in relevant part, that the evidence found in her purse was the fruit of an unlawfully extended traffic stop. The district court denied the motion upon determining the length of the stop was constitutionally reasonable. Stone-Jones entered a conditional guilty plea to possession of methamphetamine with the intent to deliver, Idaho Code § 37-2732(a), and a habitual drug offender enhancement, I.C. § 37-2739, reserving her right to appeal the denial of her suppression motion. The district court entered a judgment of conviction and imposed a unified sentence of twenty-five years, with three years determinate.

The proceedings in Docket No. 41607 commenced while Stone-Jones was out on bond in Docket No. 41513. Officers executed a search warrant for her residence and found in her bedroom a cache of contraband, including methamphetamine, glass pipes, used syringes, glass vials, plastic baggies, a digital scale, several color copies of a $100 bill, and a counterfeit $100 bill on top of a computer and printer. Stone-Jones was charged with possession of methamphetamine, forgery, possession of drug paraphernalia, and a habitual drug offender enhancement. She pleaded guilty to one count of possession of methamphetamine, I.C. § 37-2732(c), and one count of forgery, I.C. § 18-3601. The district court imposed a unified sentence of seven years, with four years determinate, on the methamphetamine count, and a concurrent unified sentence of fourteen years, with four years determinate, on the forgery count. The district court ordered that the sentences run concurrently with the sentences in Docket No. 41513. Stone-Jones now appeals from the denial of her motion to suppress and from her sentences in both cases.

ANALYSIS

**A.** **Motion to Suppress**

Stone-Jones contends the district court erred by denying her motion to suppress the evidence found in her purse because it was discovered while her detention was being illegally prolonged. Specifically, she contends the detention was impermissibly extended after the officers completed their DUI investigation.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to Fourth Amendment restraints. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Grantham*, 146 Idaho 490, 495-96, 198 P.3d 128, 133-34 (Ct. App. 2008); *State v. Ramirez*, 145 Idaho 886, 888, 187 P.3d 1261, 1263 (Ct. App. 2008). Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *State v. Danney*, 153 Idaho 405, 409, 283 P.3d 722, 726 (2012); *Grantham*, 146 Idaho at 496, 198 P.3d at 134.

An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Danney*, 153 Idaho at 409, 283 P.3d at 726. There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985); *Grantham*, 146 Idaho at 496, 198 P.3d at 134. Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Grantham*, 146 Idaho at 496, 198 P.3d at 134. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.*; *Ramirez*, 145 Idaho at 889, 187 P.3d at 1264.

Stone-Jones' argument that the officers illegally prolonged the stop is not convincing. Although the DUI investigation had apparently been completed, the officers nonetheless were entitled to continue the detention based on the ongoing reasonable, articulable suspicion that Stone-Jones and the driver were involved in illegal drug activity. The facts giving rise to this suspicion included those known to the officers before the stop was effectuated: a tip from a known informant that Stone-Jones would be involved in illegal narcotics activity in the Home Depot parking lot; corroboration of the tip when an officer observed Stone-Jones and the driver engaging in suspicious activity in the parking lot of Home Depot;[1] and knowledge that Stone-Jones and the informant had recently been stopped in Valley County and as a result, Stone-Jones had been arrested for possession of methamphetamine. After the stop, Jax alerted on the vehicle and the driver had in his possession $1400 in cash, an amount Officer Cromwell knew from his training and experience to be the approximate price of one ounce of methamphetamine.

Stone-Jones argues that the officers' failure to find drugs after a search of the vehicle following Jax's alert meant that the "drug investigation was over." We are not convinced that the failure of the vehicle search to turn up any drugs dispelled the reasonable suspicion that Stone-Jones and the driver were involved in drug activity. Facts still remained that pointed to Stone-Jones and the driver engaging in a drug transaction in the Home Depot parking lot. As the State points out, it was reasonable for officers to suspect that Stone-Jones and the driver sold any drugs they possessed in the Home Depot parking lot or during the short stop they made after leaving Home Depot or that Stone-Jones was concealing drugs in the obviously full purse she was carrying when she exited the vehicle. Thus, even after the search of the vehicle failed to unearth drugs, the officers still had reasonable, articulable suspicion that Stone-Jones and the driver were engaged in illegal drug activity such that continuing the detention after the DUI investigation was permissible. *See State v. Anderson*, 154 Idaho 703, 708, 302 P.3d 328, 333 (2012) (holding that a drug dog's failure to alert does not necessarily eliminate probable cause

---

[1]    An officer observed Stone-Jones in the passenger seat of a black Chevy Blazer, the same vehicle identified by the informant, parked in a Shari's Restaurant parking lot, which is located in the same shopping complex as Home Depot. The officer observed Stone-Jones exit the Blazer from the passenger side and get into the passenger side of a green Toyota Tercel that had just pulled up. For the next several minutes, the Toyota made two or three circles around the parking lot of the shopping complex and then pulled back into the Shari's parking lot where the Blazer was still parked. Stone-Jones exited the Toyota and returned to the Blazer. The Blazer left the parking lot and began returning toward Boise.

that drugs are present, but is only one fact to be considered while assessing the totality of the circumstances). The district court did not err by denying Stone-Jones' motion to suppress.

**B.      Sentence Reviews**

Stone-Jones contends that given any view of the facts, the sentences imposed in her two cases were excessive because they were not necessary to achieve the goals of sentencing. She contends the sentencing courts failed to adequately take into account relevant mitigating factors including her abusive childhood and marriage and resulting substance abuse and mental health issues. She also points to her three years of progress after moving to Montana and seeking treatment for her mental health and substance abuse issues, which continued until her most recent relapse upon moving back to Boise. She contends that although the district court in Docket No. 41513, indicated it would not impose a life term, the unified sentence of twenty-five years it did impose amounts to essentially a life sentence given her age. Finally, she contends she admitted what she did was wrong, has learned from her mistakes, and shorter sentences would allow her to pursue meaningful rehabilitation as she did in Montana.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In Docket No. 41513, the State requested a unified sentence of twenty-five years, with ten years determinate. The district court imposed a unified sentence of twenty-five years, with

three years determinate, noting numerous factors. First, the court indicated its agreement with defense counsel that Stone-Jones' primary impetus behind selling drugs appeared to be to support her own habit as opposed to making money. However, the court expressed significant concern regarding Stone-Jones' prior record, which included felony possession of a controlled substance; four driving without privileges and one driving under the influence; the felony charges she had dismissed, including six counts of forgery; one count of grand theft and one count of grand theft by receiving stolen property; and the then-pending controlled substance charge in a separate case. The court also indicated that the psychological evaluation prepared upon the court's order influenced its decision: the evaluator noted that Stone-Jones had not benefitted from certain treatment she received in the past and that she was a high risk to the public and to engage in future violence[2] without treatment. The court noted Stone-Jones had attended drug court in the past, but had been discharged and sent to prison and that she was later paroled for a time, but again sent back to prison to complete her sentence. She attended therapeutic community while incarcerated and had received some treatment while previously on parole. The court further noted that the presentence investigator, after considering the relevant factors, stated that Stone-Jones would benefit from treatment while incarcerated and that probation or treatment in the community was not appropriate. The court also specifically discussed Stone-Jones' difficult upbringing and marriage, her significant mental health issues, and extensive history of drug abuse.

Before announcing the sentence, the court discussed the applicable *Toohill* factors, noting in regard to rehabilitation that Stone-Jones had the benefit of numerous treatment opportunities but had still not been able to conform to the law. In regard to protection of the community, the court stated it was troubled by the conclusion of the psychological evaluator that Stone-Jones was a high risk to the public and to engage in future violence. Finally, the court recognized that based on the repeat drug offender enhancement, it could impose a life term, but did not believe that was appropriate in this case. Rather, the court imposed a reasonable determinate term to give Stone-Jones the opportunity for rehabilitation while in a custodial setting and to give her a

---

[2]     Stone-Jones' criminal history does not include violent offenses. The evaluator's assessment in this regard appears to be based on Stone-Jones' self-reporting of "violent tendencies" including lashing out physically against property and people when she becomes angry. The evaluator also indicated that Stone-Jones "scored as being a high risk to engage in future general violence" on a specific assessment he administered.

realistic opportunity for release into the community. However, should Stone-Jones not be able to demonstrate an amenability to be released back into the community, the lengthier indeterminate period would satisfy the remaining *Toohill* factors.

In Docket No. 41607, the district court imposed a unified sentence of seven years, with four years determinate, for the possession of methamphetamine count and a unified sentence of fourteen years, with four years determinate, for the forgery count. The district court ordered that the sentences run concurrently with each other and with the sentences in Docket No. 41513. In imposing sentence, the district court noted that it reviewed the applicable reports (which were the same as those prepared for Docket No. 41607), considered the nature of the offenses and character of the offender, the relevant mitigating and aggravating factors, including her addiction issues, as well as the *Toohill* factors.

Considering all the relevant circumstances, we cannot say the district courts abused their discretion in imposing the sentences. Both courts indicated they took into account the relevant mitigating factors, with the court in Docket No. 41513 describing at length the allegedly mitigating information that Stone-Jones now contends that it did not properly consider. The facts remain that Stone-Jones had a significant criminal history, was selling drugs, had been given numerous chances for rehabilitation, and had been evaluated as posing a high risk to society and for future violence with the requisite treatment. In addition, the presentence investigator expressed the opinion that Stone-Jones could not obtain the necessary level of treatment unless incarcerated. Neither court imposed the maximum sentences available; in Docket No. 41513, the district court articulated that the relatively shorter determinate sentence with a longer indeterminate portion was to grant Stone-Jones the opportunity for rehabilitation and release should she achieve that rehabilitation, but to ensure the protection of society if she did not. Stone-Jones fails to carry her burden to show the sentences are excessive even considering the mitigating factors she argues on appeal.

### III.

### CONCLUSION

Because the officers still had reasonable articulable suspicion that Stone-Jones and the driver were engaged in illegal drug activity, the continuation of the stop was constitutionally permissible and the district court did not err by denying Stone-Jones' motion to suppress. Stone-Jones has also not shown that the sentences imposed by the district courts in the two cases were

excessive. Stone-Jones' judgments of conviction and sentences for possession of methamphetamine with the intent to deliver, a habitual drug offender enhancement, possession of methamphetamine, and forgery are affirmed.

Judge LANSING and Judge MELANSON, **CONCUR.**