**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49018**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 2, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CHELSEA MARIE JOHNSON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgment of conviction for trafficking in heroin, possession of a controlled substance, and possession of drug paraphernalia, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Chelsea Marie Johnson appeals from her judgment of conviction for trafficking in heroin (twenty-eight grams or more), Idaho Code § 37-2732B(a)(6)(C), possession of a controlled substance, I.C. § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A. Johnson alleges the district court erred by denying her motion for mistrial. A denial of a motion for mistrial is reviewed for reversible error. Because the effect of the error was minimal given the probative force of the trial record as a whole establishing Johnson's guilt beyond a reasonable doubt: there is no reversible error; the district court did not err, and the judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are undisputed on appeal. While on patrol one evening, Officer Canfield saw a car parked in a gas station parking lot. A records check of the car's license plate

1

indicated that Johnson was the owner of the car and there was an outstanding warrant for her arrest. Officer Canfield followed the car and made contact with Johnson after she parked and exited the vehicle. Johnson denied her identity to Officer Canfield, claiming instead to be her sister, Deniese. A drug-detection dog positively alerted on Johnson's car. A subsequent search of the car resulted in the discovery of drug paraphernalia and suspected heroin in a blue-topped container. Additionally, drug paraphernalia was found in Johnson's purse. Although Johnson continued to claim to be Deniese, she eventually admitted her true identity. Johnson was arrested and transported to jail where three baggies of suspected methamphetamine and heroin were taken from her person.

The State charged Johnson with trafficking in heroin (twenty-eight grams or more), possession of a controlled substance, and possession of drug paraphernalia. The trafficking in heroin charge was based on aggregating the heroin found in Johnson's car in the blue-topped container with the heroin taken from Johnson's person at the jail.

The State disclosed the exhibits it intended to introduce at trial, which included Officer Canfield's body camera footage of his encounter with Johnson on the night of her arrest. In the video footage, Johnson, while assuming the identity of Deniese, told Officer Canfield about her criminal history:

Officer Canfield: Have you ever been arrested before?
Johnson: Um, no. I did get a grand theft charge one time, but it was like, it was, uh, dismissed. It was, I did, um--
Officer Canfield: You on probation or parole?
Johnson: No, sir.[1]

In response to the State's disclosures, Johnson moved to redact multiple portions of audio from Officer Canfield's body camera footage. The district court granted some of Johnson's redaction requests, including Johnson's statements to Officer Canfield that she (while posing as Deniese) had previously been arrested for grand theft, that charge was dismissed, and she was not on probation or parole.

The case went to trial. In her opening argument, Johnson conceded to possessing methamphetamine and drug paraphernalia, but argued that she was not guilty of trafficking heroin because she did not own or knowingly possess the heroin found in the blue-topped container.

---

[1] Johnson has transcribed this portion of the video for purposes of the appeal. There is no separate transcript of the video footage.

During its presentation of evidence, the State moved to admit Officer Canfield's body camera footage. The district court admitted the video exhibit and it was played for the jury. Johnson's statements about the grand theft charge and probation or parole status had not been redacted.

The district court ordered a recess, during which Johnson moved for a mistrial. The State acknowledged that it had forgotten to redact the statements at issue. The district court noted that although the statements at issue should have been redacted pursuant to the court's order, the prejudicial value of the statements might be low; the statements were "transient," made while Johnson was impersonating her sister; and the statements concerned an arrest and dismissal, not a conviction, for the grand theft charge. The district court took the matter under advisement, reserving its decision on the motion until after the conclusion of evidence when the court could better analyze the effect of the statements against the entirety of the trial record.

The district court ordered the State to prepare a new exhibit with the ordered redactions and the trial resumed. When the jury returned to the courtroom, the district court instructed the jury to disregard the statements at issue:

> Ladies and Gentlemen, before the break, you were listening to an audio recording. At the very end of that audio recording, there was a statement made by the defendant referencing a prior arrest. Apart from the fact that it was made referring to another individual, I am going to instruct you now to disregard that statement in its entirety. Do not--if you did make a note about it, cross it out. Do not consider it or refer to it or rely on it in any way in your deliberations.

At the close of evidence, the district court again instructed the jury not to consider the statements during deliberations because it was not to be considered evidence in the case:

> You're to decide the facts from the evidence presented in this case . . . .
> There are certain things that you may have heard or seen which arenot evidence . . . .
> . . . not evidence is any testimony that has been excluded or stricken or which you have been instructed to disregard. And you may recall that I gave an instruction to disregard a comment that you heard at the end of an audio tape. It should not come into your deliberations or be referred to or relied on by you in any fashion.

After the jury began deliberations, the district court formally denied Johnson's motion for mistrial, finding that given the weight of the evidence presented, the erroneous introduction of a "stray comment at the end on which the jury has now been instructed twice to disregard would not have any influence on their final verdict."

The jury found Johnson guilty of all three charges. The district court sentenced Johnson to a unified term of twenty-five years, with fifteen years determinate, for trafficking in heroin; three determinate years for possession of a controlled substance; and one year of jail for possession of drug paraphernalia, with the sentences to run concurrently. Johnson timely appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

## III.

## ANALYSIS

Johnson alleges the district court erred in denying her motion for a mistrial because the State's failure to redact Johnson's statements, made while impersonating her sister, about a prior arrest record and probation status resulted in prejudicial evidence being presented to the jury and, accordingly, constituted reversible error. In response, the State alleges the district court did not err.

In criminal cases, motions for mistrial are governed by I.C.R. 29.1, which provides that "[a] mistrial may be declared on motion of the defendant when there occurs during the trial, either inside or outside the courtroom, an error or legal defect in the proceedings, or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial." The threshold inquiry on appeal in evaluating the denial of a motion for a mistrial is whether the State introduced error.

4

*State v. Richardson*, 168 Idaho 25, 30, 478 P.3d 754, 759 (Ct. App. 2020). It is undisputed, both before the district court and on appeal, that the State introduced the error by failing to make the ordered redaction to Officer Canfield's body camera footage before it was admitted into evidence and played for the jury.

However, a defendant is entitled to a fair trial, but not a perfect trial. *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991); *State v. Estes*, 111 Idaho 423, 428, 725 P.2d 128, 133 (1986). Accordingly, error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the standard of review is one of harmless error. This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Richardson*, 168 Idaho at 31, 478 P.3d at 760. If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* at 33, 478 P.3d at 762. The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

We first consider the probative force of the admission of the statements. It is well established that the admission of improper evidence does not automatically require a mistrial. *State v. Grantham*, 146 Idaho 490, 498, 198 P.3d 128, 136 (Ct. App. 2008); *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004); *see also State v. Rose*, 125 Idaho 266, 269, 869 P.2d 583, 586 (Ct. App. 1994). A district court's curative instruction is a factor to consider when determining the probative force of the error. *Richardson*, 168 Idaho at 31, 478 P.3d at 760. Where improper evidence is introduced into a trial and the trial court promptly instructs the jury to disregard such evidence, we presume that the jury followed the court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). This presumption may be overcome if there is an overwhelming probability that the jury will be unable to follow the trial court's instructions and a strong likelihood that the evidence would have a devastating effect to the defendant. *Grantham*, 146 Idaho at 498, 198 P.3d at 136.

Johnson acknowledges the district court instructed the jury to disregard the statements at issue, but argues the admission of the statements was nonetheless "prejudicial and deprived her of a fair trial," and "influenced the jury's evaluation of her credibility, regardless of the curative instructions." We disagree. Johnson fails to establish that this Court should set aside the presumption that the jury followed the district court's instruction. Johnson does not point to evidence in the record establishing an overwhelming probability that the jury was unable to follow the district court's instruction and that there was a strong likelihood the statements had a devastating effect on Johnson's defense. The statements came towards the end of a nearly twenty-two minute video, during which Johnson made multiple contradictory claims and assumed the identity of her sister. Because Johnson made the statements while she claimed to be her sister, the statements did not relate to an admission that *Johnson* had a previous criminal arrest or was not on probation but instead that *her sister* had a previous criminal arrest and was not on probation. Because the statements, in context, purported to relate to Johnson's sister, the record does not demonstrate the statements had a devastating impact on Johnson's defense. Moreover, the jury was instructed to ignore the statements and there is nothing that indicates the jury was unable to do so. As such, we presume that the jury disregarded Johnson's statements that she made, while pretending to be her sister, denying a probation, parole, or arrest record.

Next we consider the probative force of the statements when weighed against the evidence in the case, excluding the statements. Officer Canfield testified that inside a car registered to and driven by Johnson, he found a hypodermic needle containing a dark-colored liquid substance, two small plastic baggies, a broken pipe, and a blue-topped container of suspected heroin. Officer Canfield testified that on Johnson's passenger seat inside a bucket, he found a blue-topped container which held various personal items and female toiletries. Officer Canfield stated that Johnson admitted that many of the personal items in the bucket were hers, although she did not claim ownership of the blue-topped container. A photo of the bucket admitted during trial showed the blue-topped container sat towards the top of the open bucket and was clearly visible when looking inside the bucket. In body-camera footage admitted at trial, Johnson admitted there was never anyone else in the car that evening.

Officer Canfield testified he also found several unused plastic baggies that were consistent with those typically used to store illegal substances, tinfoil, and a small digital scale with brown or black heroin on it that was consistent with the heroin inside Johnson's purse. Officer Canfield

6

stated that in a search conducted prior to transporting Johnson to jail, officers found $1,200 in the back-pocket of Johnson's jeans and at the jail, baggies containing suspected controlled substances were taken from Johnson's person.

A detective who interviewed Johnson at the jail testified that Johnson admitted that the plastic baggies, broken pipe, and scale were hers and a portion of the money recovered on her person was from the sale of drugs. The detective testified that although Johnson never claimed ownership of the blue-topped container and she suggested that a friend may have lost it in Johnson's car, Johnson also told the detective that she knew the container was in her car and that it contained a substantial amount of heroin. The detective testified that State's Exhibit 4 was the substance found in the blue-topped container and State's Exhibit 5 was one of the substances found during the search of Johnson at the jail. A forensic scientist testified that after analyzing State's Exhibit 4 and Exhibit 5, she determined that they contained 16.85 grams and 12.5 grams of heroin respectively.

Weighing the probative value of Johnson's erroneously admitted statements against the probative value of the record as a whole without the statements, we conclude Johnson's statements about a prior arrest and probation status made while she was pretending to be her sister, did not have a continuing effect on the trial. Rather, those statements were unimportant in relation to all the other evidence presented to and considered by the jury, including Johnson's other contradictory statements that undermined her credibility. This Court is satisfied that the error was minimal when compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, and the error did not contribute to the jury's verdict. Thus, the district court did not err in denying the motion for a mistrial.

## IV.
## CONCLUSION

Playing the unredacted video for the jury did not constitute reversible error. Accordingly, the district court did not err in denying Johnson's motion for mistrial and the judgment of conviction is affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.

7