855 P.2d 891

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Sammy D. SHEPHERD, Defendant–Appellant.**

**No. 19818.**

Court of Appeals of Idaho.

July 2, 1993.

Terry S. Ratliff, Mountain Home, for appellant.

Larry EchoHawk, Atty. Gen. and Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Sammy David Shepherd was found guilty by a jury of sexual abuse of a child under the age of sixteen, I.C. § 18–1506. The sole issue on appeal is whether Shepherd's right to a fair trial was violated when the state's witness unexpectedly volunteered that Shepherd had also molested another young man. For the reasons explained below, we vacate the judgment of conviction and remand the case for a new trial.

### I.

Shepherd was tried upon allegations that he had committed manual-genital contact with an eleven-year old boy, "J.P." [1] During the direct examination by the state, J.P. testified that Shepherd used to baby-sit him after school until his mother arrived home from work, and that Shepherd was like a father to him for a while. The examination continued:

> PROSECUTOR: [C]ould you tell the ladies and gentlemen of the jury if anything happened that made you change your feelings about David Shepherd?
>
> WITNESS: Well, he wanted things his way. He wanted to have us eat things his way. He always was bugging us about our house was so messy and about what to eat and—
>
> PROSECUTOR: And was there any other reason?
>
> WITNESS: Not then.
>
> PROSECUTOR: Not then. When was there ever a time that there was something else?
>
> WITNESS: Oh, about two months ago.
>
> PROSECUTOR: Two months ago? What happened two months ago?
>
> WITNESS: Well, David Shepherd molested [B.W.].
>
> DEFENSE: Objection, Judge.
>
> PROSECUTOR: It's not offered for the truth of the matters contained in that statement. And I will ask another question.

1. The information charged Shepherd with lewd conduct with a minor. The jury found him guilty of the lesser included offense of sexual abuse of a child.

DEFENSE: Judge, I'd like to make a motion outside the presence of the jury.

The judge excused the jury, and the following exchange occurred:

DEFENSE: Judge, at this time I'd move for a mistrial. I realize that we have a young witness on the stand, but I don't see how the court can give a corrective instruction based on what he's saying. Two months ago allegedly the defendant molested another child. I think that's highly prejudicial. I didn't know it was coming. I don't even think the state knew it was coming, but the jury heard it. I don't see how the court, this court can give a corrective instruction without compounding to the problem....

. . . . .

PROSECUTOR: I will advise the court that what [J.P.]'s referring to is right before he made his revelations to his mother, there was an allegation made by an adult by the name of [B.W.], not a child.... This gave rise to a conversation between [J.P.] and his mother wherein [J.P.] revealed the abuse. I think that's what [J.P.] was trying to get at, and the words just came out different.

I think a curative instruction would suffice to eliminate the problem. We're not asking that the jury even consider the allegations that were made by [B.W.].

THE COURT: How in the world can we not have them consider? How do you plan to—how does this connect up?

PROSECUTOR: The only way I can connect it up, Your Honor, is to have [J.P.'s mother] testify as to all of the circumstances that gave rise to her talking to [J.P.] ánd her concern for [J.P.].... And [defense counsel] is correct. I did not realize that [J.P.] was going to choose this way to present it....

DEFENSE: Judge, I just don't see how a distinction can be made how to explain to the jury whether it's a juvenile or an adult. I don't think it really matters.

You know, here's a juvenile testifying about these allegations. The jury heard it, and there's no way to overcome the prejudice.

After considering these arguments, the district judge denied the motion and called in the jury. Over defense counsel's objection,[2] the court then gave the following instruction:

You may hear testimony concerning—or that certain accusations were made by [B.W.] against this defendant. But you will hear no proof that these accusations were true. The evidence of these accusations is being admitted—will be admitted for the following limited purpose and for no other: You may consider the fact that [J.P.] learned of them only as this evidence may bear on the weight to be given to the testimony of [J.P.] You must not consider the fact that these accusations were made as any proof that they are true, nor should you speculate in any way that because these accusations were made that the defendant is a bad person or is of bad character or that the defendant, because of these accusations, is more likely than not to be guilty of the crime against [J.P.].

So you're to consider this evidence for the limited purpose of bearing on the testimony of [J.P.], but not in any way against the defendant, Sammy David Shepherd.

The state recalled J.P. to the witness stand. The boy testified that on about six or seven separate occasions, Shepherd and he had gone into J.P.'s bedroom, removed their clothes, laid on the bed and masturbated each other. He also testified that on some of these occasions, Shepherd asked him to get on top and "act like he was a girl and have sex with him, if he was a girl." The state then called J.P.'s mother, who had shared an intimate relationship with Shepherd during the time of the alleged misconduct. She provided mostly background information and told the jury that her relationship with Shepherd ended

---

**2.** The defense had argued that the court's instruction to the jury would compound the error, rather than cure it.

after she and J.P. moved from the area. Finally, Shepherd took the stand and denied each of the allegations J.P. had made against him. Neither side questioned these witnesses about J.P.'s initial disclosure to his mother, and the accusation by B.W. against Shepherd was never mentioned.

After its deliberations, the jury returned a verdict finding Shepherd guilty of sexual abuse of a minor. Shepherd filed this appeal, contending that the statement that Shepherd had molested someone else, albeit unanticipated by either side, violated his right to a fair trial. He argues that the district court's refusal to grant a mistrial constituted reversible error.

## II.

◼ Our standard for review of a refusal to grant a mistrial upon a motion in a criminal case is well established.

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart,* 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983). *See also State v. Guinn,* 114 Idaho 30, 752 P.2d 632 (Ct.App.1988); *State v. Stoddard,* 105 Idaho 169, 667 P.2d 272 (Ct.App.1983).

◼ The threshold inquiry is whether the state introduced error. It is conceded that the prosecutor's question was not designed to elicit the objected-to response, but that the witness unexpectedly blurted out his answer. Hence, the issue is not one of prosecutorial misconduct but focuses on the propriety of the evidence adduced from the witness. *Compare State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App.1983). The introduction of other crimes, wrongs or bad acts is forbidden to show propensity or guilt of the crime charged. *See* I.R.E. 404(b); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992); *State v. Winkler,* 112 Idaho 917, 736 P.2d 1371 (Ct.App.1987). This exclusion is based upon the theory that such evidence induces the jury to believe the accused is more likely to have committed the charged crime because he or she is a person of bad character. It thus takes the jury away from its primary consideration, which is the defendant's guilt or innocence of the particular crime for which he or she is on trial. *Winkler,* 112 Idaho at 919, 736 P.2d at 1373. However, evidence of unrelated bad acts may be admitted if offered for some other, permissible purpose. *See* I.R.E. 404(b); *State v. Arledge,* 119 Idaho 584, 808 P.2d 1329 (Ct.App.1991); *Winkler,* 112 Idaho at 919–20, 736 P.2d at 1373–74. To be admissible, such evidence first must be relevant to a material issue in the case. *See* I.R.E. 104(a). If relevant, then the evidence may be admitted if its probative value is determined to outweigh its prejudicial effect. I.R.E. 403; *Arledge,* 119 Idaho at 588, 808 P.2d at 1333; *Winkler,* 112 Idaho at 920, 736 P.2d at 1374; *State v. Roach,* 109 Idaho 973, 712 P.2d 674 (Ct. App.1985).

◼ At the time of the mistrial motion, the state anticipated that the defense would attack J.P.'s credibility by questioning his late disclosure of the abuse. The prosecutor argued to the court that under such circumstances, the state should be permitted to present rebuttal testimony to explain the reasons for the disclosure, specifically, that J.P.'s knowledge of another accusation against Shepherd had provided the impetus for reporting his own abuse. Based upon this argument, the district court ruled that granting a mistrial would be inappropriate.

As the record discloses, however, the defense never broached the topic of J.P.'s

report to his mother, and thus never "opened the door" for the state to elicit the evidence of the other accusation against Shepherd. Viewing the record in its entirety, as we must on appeal, it is evident that the fact that J.P. had learned of another accusation against Shepherd was irrelevant to any material issue before the jury.[3] Lacking relevance, the statement that Shepherd molested another boy—even if only an accusation—was inadmissible and its introduction by the state error.[4]

### III.

 Next, we must decide whether the introduction of error constituted reversible error requiring that Shepherd's conviction be set aside. The right to due process does not guarantee a defendant an error-free trial, but a fair one. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Consequently, error is not reversible unless it is shown to be prejudicial. *State v. Stoddard,* 105 Idaho 169, 667 P.2d 272 (Ct.App.1983). Error will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction. *State v. Le-Page,* 102 Idaho 387, 630 P.2d 674 (1981), *cert. denied* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Rupp,* 118 Idaho 17, 794 P.2d 287 (Ct.App.1990); *State v. Poland,* 116 Idaho 34, 773 P.2d 651 (Ct. App.1989).

 In this case the verdict was based solely upon the statements of J.P., the alleged victim. There were no other witnesses to the alleged crime, and no physical or other circumstantial evidence was introduced to corroborate J.P.'s allegations.[5] Moreover, Shepherd's own testimony directly contradicted J.P.'s allegations. Thus, the case necessarily turned upon the jury's assessment of the credibility of J.P.'s testimony. We note again that the court expressly informed the jury that it could consider the fact of the accusation "as this evidence may bear on the weight to be given the testimony of [J.P.]." Given the entire record in this case, we cannot say, beyond a reasonable doubt, that the jury would have found Shepherd guilty had it not been told that Shepherd had been accused of molesting another boy. Accordingly, we hold that the error in this case was not harmless.

### Conclusion

Based upon the foregoing, we conclude that the state introduced error into the trial and that such error violated Shepherd's constitutional right to a fair trial. We therefore reverse the decision denying the motion for mistrial, vacate the judgment of conviction, and remand the case for a new trial.

LANSING and SWANSTROM, JJ., concur.

---

**3.** There was nothing before the jury to indicate when J.P. made the disclosure to his mother, nor when he learned of the other accusation against Shepherd. Thus, there was nothing from which the jury, on its own, could have inferred a relationship between the two events.

**4.** We note that the district court was presented with the dilemma of deciding whether to refuse the motion for mistrial and wait to see if the then-inadmissible evidence would "connect up" as promised by the state—which is what the court chose to do in this case—or to declare a mistrial and retry the case, with a likelihood that the evidence would be admitted during the second trial. As we noted above, however, the focus of our inquiry is not whether the trial

judge reasonably exercised his discretion in light of circumstances existing at the time the mistrial motion was made. Rather, our standard on review is whether the event which precipitated the motion for mistrial deprived the defendant of the right to a fair trial *when viewed retrospectively. See State v. Urquhart,* 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App. 1983).

**5.** The state introduced one other item of physical evidence, a photography book owned by Shepherd which contained pictures of nude women. J.P. testified that he had looked at the book on several occasions, all subsequent to the events alleged as the gravamen of the charges against Shepherd.