**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 45373**

| | |
|---|---|
| STATE OF IDAHO,<br><br>      **Plaintiff-Respondent,**<br><br>v.<br><br>**BRAD CAREY REED,**<br><br>      **Defendant-Appellant.** | )<br>)  **Filed:  February 25, 2019**<br>)<br>)  **Karel A. Lehrman, Clerk**<br>)<br>)  **THIS IS AN UPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

GRATTON, Chief Judge

Brad Carey Reed appeals from his judgment of conviction for possession of methamphetamine.  On appeal, Reed asserts four claims of error.  First, Reed argues the district court erred in denying his motion to suppress evidence.  Second, Reed argues the district court erred in admitting evidence of his demeanor when he revoked consent to search his vehicle.  Third, Reed argues the district court erred in denying his motion for a mistrial based on a statement in the State's closing argument.  Last, Reed argues the State committed prosecutorial misconduct during closing argument amounting to fundamental error.  For the reasons provided below, we affirm.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court set forth the following facts based upon testimony and an audio recording presented at a hearing on Reed's motion to suppress. Police officers responded to a call from a resident who suspected a burglary was in progress in the alley behind his property. Officer Smotherman arrived first and immediately detained and handcuffed the driver of a white Jeep parked at the end of the alley. Nearly a minute later, Officer Caldwell arrived. The two officers went around the block to the resident's house. The officers contacted the resident who reported that he saw two vehicles in the alley: a white Jeep with one occupant and a green van with two occupants. He also heard his backyard gate rattle, saw flashlights in his backyard, and saw someone take a gas can from his neighbor's garage.

As officers were talking with the resident, a green van, driven by Reed with one passenger, entered the alley. The officers ran around the block to the alley, had Reed and his passenger exit the van, and placed handcuffs on both men. Officer Smotherman then returned to the driver of the white Jeep and continued questioning him. Approximately three minutes later, Officer Smotherman began questioning Reed and his passenger regarding the reported burglary. In the process of questioning Reed, Officer Smotherman requested permission to search Reed's van for stolen items, which Reed granted. Officer Smotherman requested Reed's identification and began a license check. Shortly thereafter, Officer Smotherman requested identification from the driver of the Jeep and ran that license check. As this occurred, Officer Caldwell began searching Reed's van. When the officer searched the glove box compartment and under the passenger seat, Reed became upset, using profanity and eventually revoking his consent to search his vehicle. The officers observed that Reed had become increasingly nervous.

Officer Smotherman returned to the van as Reed was using profane language while revoking his consent. Officer Smotherman asked to search the van again, but Reed denied consent. Officer Smotherman then conferred with another officer regarding the situation and called for a drug dog. Officer Smotherman then returned to Reed and sought to regain consent to search Reed's vehicle, asking Reed if there was anything illegal, such as drugs, in the van. Reed continued to deny consent. Officer Smotherman went back around the block to finish his questioning of the resident who had initially reported the alleged burglary. After completing his discussion with the resident, Officer Smotherman returned to the alley. At some point during

2

Officer Smotherman's last conversation with the resident, a drug dog and another officer arrived in the alley behind the house and proceeded to conduct a free-air sniff. The canine positively alerted, the officers searched the van, and the search yielded methamphetamine. The State thereafter charged Reed with possession of methamphetamine, and Reed responded by filing a motion to suppress, arguing the officers unlawfully extended the duration of the stop. After a hearing, the district court denied Reed's motion to suppress, ruling that the scope and duration of the stop were reasonable. Specifically, the district court determined that officers were permitted to ask brief and general questions about drugs and weapons when making stops, and such questioning was within the permissible scope of the initial detention. The district court also found that Officer Smotherman did extend the stop; however, such extension was both related to the burglary and supported by reasonable suspicion. Additionally, the district court found that the entire drug sniff occurred while the burglary investigation was still underway.

Reed pled not guilty and proceeded to trial. The jury found Reed guilty of possession of methamphetamine. Reed timely appeals from his judgment of conviction.

## II.

## ANALYSIS

### A. Motion to Suppress

First, Reed contends the district court erred in denying his motion to suppress evidence obtained from his vehicle because the length of his detention was impermissibly extended to conduct a drug investigation without reasonable suspicion. Specifically, Reed argues that the officers' investigation into other criminal activities extended the stop to provide time for the drug dog to arrive. The State asserts the district court correctly found the brief diversion of attention from the burglary investigation was supported by reasonable suspicion. The State also argues the district court correctly found that the drug-dog sniff occurred prior to the end of the burglary investigation.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

3

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Reed concedes the initial stop was lawful; however, he contends that the stop was unlawfully extended when the officers sought consent to search the vehicle after Reed withdrew his initial consent. Specifically, Reed argues that the request to search for "anything" illegal was beyond the scope of the related burglary investigation and therefore unlawfully extended the purpose of the stop in order to provide time for the drug dog to arrive.

The record reflects officers originally responded to a call regarding a burglary in an alley near midnight on the Fourth of July. Reed initially consented to a search of his van. However, when Officer Caldwell looked in the glove box and under the seat, Reed became very upset and

4

vocal. Reed revoked his consent to search the car.[1] Officer Smotherman attempted to regain consent, including suggesting to Reed a broader scope of the proposed search, without success. The officers' conduct and questioning were still part of the burglary investigation. The situation with respect to an investigation, based upon a third-party complaint, is not identical to the conduct of a traffic stop. In the traffic stop context, the officer knows the facts of the traffic violation justifying the stop, and the scope of police conduct related to that stop is relatively narrow. In the context of an investigation, the officers are attempting to determine if criminal conduct has occurred or is occurring. Consequently, the scope of police activity in an investigation of criminal conduct is not necessarily more broad than the processing of a traffic violation. Here, the investigation into a possible burglary did not end until Officer Smotherman completed his final discussion with the complaining party, by which time the canine had alerted on the van. The collective conduct of the officers occurred during and did not extend the burglary investigation or detention associated therewith. The district court did not err in denying Reed's motion to suppress evidence.

## B. Demeanor Evidence

Reed next argues the district court erred by allowing testimony regarding his demeanor when he revoked his consent to search his vehicle. Specifically, Reed argues the revocation and his demeanor were so intertwined that mention of his demeanor could not be detached from the inference that he revoked his consent to search his vehicle. Thus, Reed argues that because it was impermissible to comment on his revocation of consent, it was likewise impermissible to comment on his demeanor at the time he revoked consent. The State agrees that testimony regarding Reed's revocation of consent was inadmissible. However, the State argues that the district court properly allowed testimony regarding Reed's demeanor when he revoked his consent to establish knowledge of the contraband.

The parties do not dispute that evidence of revocation of consent to search is inadmissible. Reed argues that, in addition, evidence of his sudden change in demeanor at the time he revoked his consent was inextricably tied to his revocation of consent and, therefore, similarly inadmissible. We agree with the district court that the line is a narrow one; but under

---

[1]     Reed's invocation of his right, by revoking consent, even in a belligerent or profane manner, may have been a factor, but did not, by itself, establish reasonable suspicion of other criminal conduct.

these circumstances, testimony regarding Reed's demeanor at the time he revoked consent was admissible. Officer Caldwell testified that Reed consented to a search of the vehicle for stolen items. When the officer began the search by looking in the glove box and under the seat, Reed's demeanor rapidly changed as Reed became increasingly upset and started cursing and yelling. Up to that time, Reed had been upset but relatively cooperative. Evidence of a person's behavior or change of behavior during a police interaction may be admissible to establish or infer facts of consequence. *See State v. Grantham*, 146 Idaho 490, 497, 198 P.3d 128, 135 (Ct. App. 2008). Here, the district court allowed the State to put on evidence of Reed's change of behavior to infer, under the circumstances, his knowledge of contraband in the vehicle. Reed's argument that either the evidence of his behavior change infers invocation of his rights or is inadmissibly misleading because it omits the context of his revocation of consent is not well taken. The district court correctly concluded that evidence of Reed's change of behavior was relevant under the circumstances and admissible so long as not contextualized by his revocation of consent.

## C.     Motion for Mistrial

Next, Reed argues the district court erred in denying his motion for a mistrial because, in closing argument, the State commented on Reed's revocation of his consent to search his vehicle, which the district court specifically stated would result in a mistrial if mentioned. The State argues the district court properly denied the motion because it was unclear from the State's comment whether the State was referring to Reed's revocation of consent. Additionally, the State argues the comment had no continuing impact on the trial.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a

6

mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983). The threshold inquiry is whether the State introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993). The right to due process does not guarantee a defendant an error-free trial, but rather a fair one. *Id.* at 58, 855 P.2d at 895. Consequently, error is not reversible unless it is shown to be prejudicial. *Id.*

At the close of the trial and after the jury was dismissed, the district court stated its reasoning for denying Reed's motion for a mistrial. In so doing, the district court identified the problematic language as: "We have somebody who owns the van and who tries to stop the officers from searching his vehicle." To which the district court determined:

> I don't know what [the State] meant by that. [It] could have meant that it was, defendant says, go close the doors. That would be stopping, trying to stop the search, it could be the statements made and yelling about being upset. That could be interpreted that way. What I don't find is that it is not a comment that the defendant withdrew his consent under [the] Fourth Amendment, and that was the issue that we had earlier this morning on the motion in limine. As I said earlier this morning, close line here. I don't think the State crossed that line, and that's why I denied the motion for mistrial.

Basically, Reed argues the entire trial was infested with references to Reed's revocation of his consent in order to prove the knowledge element of the offense. However, the statement that was objected to and was the basis for the motion for mistrial was that "Reed tried to stop officers from searching his van." We agree with the district court that the ambiguous statement at issue did not amount to the State's introduction of error in violation of the district court's prior order in limine. Therefore, the district court did not err in denying Reed's motion for a mistrial.

### D.      Prosecutorial Misconduct

Last, Reed argues the State committed prosecutorial misconduct during closing argument amounting to fundamental error. Specifically, Reed takes issue with three statements made during closing argument, one to which Reed objected and two to which he did not object. Two of the statements, one objected to and one not, referred to Reed objecting to the officer's search of his vehicle. The third, unobjected-to statement referred to the sympathetic nature of defense counsel's presentation of Reed.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and

required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

As discussed above, the objected-to statement in the State's closing argument regarding Reed's attempt to stop the search of his vehicle did not constitute error. Accordingly, we need not discuss the issue further.

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

During rebuttal argument, the prosecutor stated "[Reed's] the one who objected to officers searching his--or to--started getting frustrated." Reed contends that it was misconduct for the prosecutor to make the statement that Reed "objected" to the search of his vehicle because it violated the district court's order in limine prohibiting mentioning that Reed revoked his consent. The State asserts that the prosecutor immediately clarified his statement, and the statement therefore cannot be deemed to be deliberately designed to violate the district court's order. Additionally, the State notes that prior to this statement by the prosecutor, defense counsel in closing argument classified Reed's words and actions as objecting to the officer's search of his vehicle.

The second prong of the fundamental error analysis requires that the appellant show that the error was "clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision." *Id.* at 226, 245 P.3d at 978. In *Perry*, the prosecutor elicited improper vouching testimony from witnesses on numerous occasions; however, defense counsel only objected in one instance. *Id.* at 228-29, 245 P.3d at 980-81. The Supreme Court determined that because the attorney objected to the same questioning in one instance but did not object on subsequent occasions, there was a reasonable possibility that the failure to object was a strategic choice and therefore did not amount to fundamental error. *Id.*

Similarly here, there were two instances where the prosecutor referenced Reed's reactions to the officer's searching his vehicle, but defense counsel chose to object only to the first statement made by the prosecutor. Thus, there is a reasonable probability defense counsel made a strategic choice not to object to the prosecutor's second statement in order to downplay the statement and also to not highlight to the jury that defense counsel had previously made a similar statement. Thus, Reed has failed to meet the second prong of the fundamental error analysis and therefore has not shown fundamental error.

Next, Reed contends that it was misconduct for the prosecutor to make disparaging comments regarding Reed's difficulty with movement, which amounted to fundamental error. Specifically, Reed takes issue with the prosecutor's final closing statements in which he stated:

> Remember my picture of Lady Justice? We're blind to sympathy. That's what the defense has given you today, really, a sympathy case. Please feel so sorry for the defendant that you acquit. He has all these health problems. He has his cane that [defense counsel] even stood up after the defendant walked halfway to the stand and was like, do you need this? Oh, no, I'm okay.

Reed argues these statements implied that Reed was faking his disability and therefore should not be believed. The State argues these statements were to rebut defense counsel's theory that Reed's sudden change in demeanor and profanity were spawned by his foot injury.

In closing, defense counsel's explanation of his changed demeanor was:

> So [Reed] says, he starts to get upset. He used profanity. Yeah, he's excitable. He's upset at that point. He's being detained; right? He's being delayed, standing in handcuffs on the side of that car with the foot that he struggles to stand on waiting for officers to conclude an investigation when he's been told, we're really not sure what we're looking for.

To the extent that Reed's own defense was that his change of demeanor was attributable to his foot injury, we will not automatically infer the more damaging interpretation of the prosecutor's statements. *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009). Thus, the statement was not misconduct and did not amount to fundamental error.

### III.

### CONCLUSION

The burglary investigation encompassed the activities of the officers and did not conclude until after the canine alert. Therefore, the investigative detention was not impermissibly extended. The district court did not err in limiting the officers' testimony to omit Reed's revocation of consent but permit testimony regarding his demeanor. The district court did not err

in denying Reed's motion for a mistrial because the prosecutor's ambiguous statement did not violate the previous order in limine prohibiting mentioning Reed's withdrawal of consent to search his car. Finally, the challenged prosecutor's closing remarks have not been shown to amount to fundamental error. Accordingly, the district court's judgment of conviction for possession of methamphetamine is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.