**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45800**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 24, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RANDY MICHAEL EVANS, | ) **OPINION AND SHALL NOT** |
| aka RANDY MICHAEL EVANS, III, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Ned C. Williamson, District Judge.

Judgment of conviction and sentence, order denying motion for mistrial, and motion for reduction of sentence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Randy Michael Evans appeals from the district court's judgment of conviction. He argues the district court: (1) erred by denying his motion for mistrial; (2) abused its discretion by imposing an excessive sentence; and (3) abused its discretion by denying his Idaho Criminal Rule 35 motion for a reduction of his sentence. The judgment of conviction and sentence, order denying motion for mistrial, and order denying the motion for reduction of sentence under I.C.R. 35 are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Evans was charged with battery with intent to commit murder with a firearm enhancement. The State alleged that Evans shot his ex-wife three times. Evans entered a plea of

1

not guilty.  At trial, the district court admonished a witness for the State, Evans' former friend, that she must not mention that Evans was previously charged with a felony and had gone to prison.  However, during her direct examination while discussing a conversation she had with Evans prior to the shooting, she mistakenly mentioned that Evans had been in prison:  "I would tell him that if he did anything like that, he would get caught and end up back in prison."  Evans objected and the district court immediately instructed the jury to "disregard any mention about prison" and moments later to "disregard any evidence whatsoever about prison."

At the end of the witness's direct examination, Evans moved the district court for a mistrial, arguing that mentioning prison implied Evans had previously been convicted of a felony and had served time in prison for that felony.  The district court took the matter under advisement, but later denied the motion for mistrial.  The district court explained that the State had posed a "totally innocent question" not calculated to elicit the statement about prison and that the witness's mention of prison was also unintentional.  The district court found the statement was significant, but not so significant to overcome the other compelling evidence of Evans' guilt or the district court's curative instructions to the jury.

The jury found Evans guilty of battery with intent to commit murder with the firearm enhancement.  The district court imposed a unified thirty-five-year sentence, with thirty years determinate.  Evans filed a motion for reduction of sentence under I.C.R. 35, which the district court denied.  Evans timely appealed.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by I.C.R. 29.1.  A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial.  I.C.R. 29.1(a).  Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the

2

> incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). Error is not reversible unless it is shown to be prejudicial. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993).

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting an I.C.R. 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of an I.C.R. 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

# III.

## ANALYSIS

Evans argues the district court:  (1) erred by denying his motion for mistrial; (2) abused its discretion by imposing an excessive sentence; and (3) abused its discretion by denying his I.C.R. 35 motion for a reduction of his sentence.

**A.**  ***Perry* Does Not Govern Appellate Review of Motions for Mistrial**

Evans asks this Court to clarify which standard of review applies to the denial of a motion for a mistrial.  He asserts that following *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), it is unclear whether the denial of a mistrial is governed by the reversible error standard articulated in *Urquhart* or whether the *Perry* harmless error analysis applies.  Under *Urquhart*, the defendant must establish the prejudicial evidence likely had a continuing impact on the trial and ultimately deprived the defendant of a fair trial.  Under *Perry*, the defendant need only show error and then the burden of proof shifts to the State to show the error was harmless beyond a reasonable doubt.  Evans asserts that under *Perry*'s objected-to error standard, the State will be unable to prove the witness's error was harmless.  Alternatively, Evans argues that if this Court reviews the district court's denial of his motion for mistrial for reversible error under *Urquhart*, and its progeny, such as *State v. Field*, 144 Idaho 559, 165 P.3d 273 (2007), the witness's error likely had a continuing impact on the trial and, thus, deprived Evans of his right to a fair trial.  The State argues the standard of review for motions for mistrial is well established under *Urquhart* and that *Perry* has no relevance to the review of motions for mistrial.

The error that Evans appeals is not an unobjected-to trial error.  It is the denial of a motion for a mistrial, which is categorically different.  Consequently, we apply the reversible error standard articulated in *Urquhart*.  Because the *Urquhart* reversible error standard controls appellate review of motions for mistrial, *see State v. Passons*, 158 Idaho 286, 292-93, 346 P.3d 303, 309-10 (Ct. App. 2015); *State v. Norton*, 151 Idaho 176, 192-93, 254 P.3d 77, 93-94 (Ct. App. 2011), Evans must establish that the prejudicial evidence likely had a continuing impact on the trial and deprived him of his right to a fair trial.  *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105.  If there is no prejudice to Evans, there is no error in denying the motion for a mistrial; establishing prejudice is part of establishing the error.  Once prejudice is established, there is no burden of proof to shift to the State.  If Evans establishes the inadmissible evidence had a continuing impact on the trial that rises to the level of a deprivation of his right to a fair trial,

4

there is nothing left (in terms of prejudice) for the State to establish. Evans has not met that burden in this case. Although the statement violated the district court's explicit instruction to the witness that she not discuss Evans' felony or prison time, the district court's curative instructions to the jury addressed the error. We presume that the jury followed the district court's instructions absent compelling circumstances dictating the opposite conclusion. *See State v. Frauenberger*, 154 Idaho 294, 302, 297 P.3d 257, 265 (Ct. App. 2013); *State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Evans does not argue or demonstrate compelling circumstances such that the presumption would be inapplicable. Consequently, Evans has not established that the witness's statement had a continuing impact on the trial or upon the jury's decision-making process. Thus, Evans was not deprived of a fair trial, and the district court did not err in denying Evans' motion for mistrial.

This conclusion is reinforced by the compelling evidence admitted against Evans at trial. Evans' trial was focused on his identity as the shooter and his alibi defense. The State presented testimony from several witnesses. The victim testified that Evans shot her three times as she was leaving her home. She testified Evans was wearing dark clothes including a black sweatshirt and a ski mask which exposed most of Evans' forehead, eyes, and nose. She recognized Evans' distinctive features including his brown eyes, large nose, six-foot stature, and the way he walked. The victim's husband's uncle, with whom she lived in the same home, testified he heard gunshots outside his house and when he went to the front door, he heard screaming and saw the victim running up the steps. He testified he saw someone standing in the driveway dressed all in black, whose height matched Evans'. Additionally, he testified that the victim said Evans had shot her.

One of the victim's neighbors testified that he saw an unfamiliar vehicle in the area; the neighbor's wife testified that after hearing gunshots, she saw a roughly six-foot man run across her property, get into a vehicle, and leave quickly. The neighbor's sister testified she also heard the gunshots and saw the man running down the road in dark clothing and get into an older, dark-colored car, which she later identified in a photo line-up. One of Evans' former friends testified that Evans had previously told her he was planning to "do something destructive" and "snipe" the victim. Evans' stepbrother testified that Evans had confessed to him that he had shot the victim. Two individuals with whom Evans and his girlfriend lived in the same home testified.

5

One testified that although he saw Evans at home on the night in question, he could have come and gone without him noticing. The other testified that Evans left around 7:30 to 8:00 p.m. and probably returned between 11:00 and 11:15 p.m.

Additionally, four law enforcement officers testified to the details of their investigations, utilizing numerous photos of the crime scene, physical evidence found at the scene, results of forensics tests, and content of interviews. One detective testified that a turquoise hand towel, wrapped over a white towel with two pieces of tape, was found at the scene and that a matching turquoise towel was found in Evans' home. The detective also testified about tire tracks found at the scene that another detective matched to Evans' vehicle by taking a plaster cast of the tracks. Additionally, the detective testified that during an interview, Evans stated he had been driving a brown vehicle, the vehicle in which another detective testified he found a ski mask.

To counter this testimony, Evans called his girlfriend who testified that he was with her around 6:30 to 6:45 p.m., eating fast food and watching television. She testified they went to get more fast food around 10:15 to 10:30 p.m., ate it in the restaurant parking lot, and then drove around town playing Pokémon Go until they returned home around 11:10 p.m. Evans testified consistently with his girlfriend's testimony.

The district court's curative instructions were sufficient to dispel any possible prejudice from the statement; in addition, the compelling evidence presented at trial also demonstrates that the statement about Evans being in prison did not have a continuing impact upon the trial. The statement had no bearing upon the main question for the jury to decide--whether Evans was the shooter--and thus Evans' right to a fair trial was not deprived.

**B.** **The District Court Did Not Abuse Its Discretion by Imposing an Excessive Sentence or by Denying Evans' Idaho Criminal Rule 35 Motion to Reduce His Sentence**

Evans argues the district court failed to give proper weight and consideration to his family support and employment history and, thus, abused its discretion by imposing an excessive sentence. Concerning his I.C.R. 35 motion, Evans contends the district court made the same error, but also failed to give proper weight and consideration to Evans' pro-social behavior while in prison, the support of friends and extended family, and Evans' personal commitment to do good and be a better person.

At sentencing, the district court proceeded methodically through the justifications and statutory factors undergirding Evans' sentence. First, the district court reviewed the overwhelming evidence of guilt presented at trial. The district court then explained it had

reviewed Evans' presentence investigation report and the impact the shooting had upon the victim. Had the victim died, the district court stated that Evans likely would have been convicted of first degree murder. The district court then reviewed the goals of sentencing--protection of society, deterrence, rehabilitation, and retribution--as they applied to Evans' case. The district court continued to evaluate the sentencing factors in Idaho Code § 19-2521, including mitigating factors. After making multiple findings, the district court imposed sentence.

After Evans filed his I.C.R. 35 motion, the district court held a hearing. The district court reviewed all the information Evans submitted in conjunction with his I.C.R. 35 motion and the evidence submitted at the hearing. Having reviewed the record, we cannot say that the district court abused its discretion in rendering Evans' sentence or denying his I.C.R. 35 motion.

## IV.

## CONCLUSION

Evans fails to show reversible error in the district court's decision to deny his motion for mistrial. Additionally, the district court did not abuse its discretion in rendering Evans' sentence or denying his I.C.R. 35 motion. The judgment of conviction and sentence, order denying motion for mistrial, and motion for reduction of sentence under I.C.R. 35 are affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.