**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46068**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 8, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JEREMY CHRISTIAN HOOVER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for possession of methamphetamine and for possession of drug paraphernalia, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jeremy Christian Hoover appeals from his judgment of conviction for possession of methamphetamine and for possession of drug paraphernalia. Hoover asserts the district court (1) abused its discretion by admitting a statement he made to a police officer in violation of Idaho Rule of Evidence 403; and (2) committed reversible error in denying Hoover's motion for mistrial based on a statement the prosecutor made in closing argument. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Hoover's convictions arise out of the police department's discovery of methamphetamine and paraphernalia in his truck, which was located at Howard Baird's residence. Hoover apparently had an agreement with Baird that Baird would replace the truck's front end. After the

1

truck had been at Baird's residence for about two weeks, however, Hoover decided to go to Baird's residence to replace the front end himself.

After Hoover had been working on the truck for about seven hours, the police executed a search warrant at Baird's residence. The warrant related to the police department's six-month investigation of Baird for dealing methamphetamine. When the police entered Baird's property, Hoover was working on his truck; the driver's side window was rolled down; and the passenger door was open. One of the officers executing the warrant looked into the truck "to clear it" for safety concerns and saw in plain view two syringes protruding from a pink box labeled as a feminine hygiene product.

Hoover was secured at the scene, and Officer Lindberg questioned Hoover, who was described as very cooperative. Although Officer Lindberg did not ask Hoover about the pink box, Officer Lindberg asked Hoover a series of questions, including questions about his methamphetamine use. The questioning was recorded:

| Officer: | Do you ever do, uh, methamphetamine? |
|---|---|
| Hoover: | I have. |
| Officer: | How long ago? |
| Hoover: | Uh, probably about, less than a day. |
| Officer: | Less than a day? Where did you get it? Did you get it from [Baird]? |
| Hoover: | No. |
| Officer: | Did you obtain it yourself through uh, or, uh, you don't deal do ya? |
| Hoover: | No. |
| Officer: | How did you get it? |
| Hoover: | Just sitting around getting high with friends. |
| Officer: | Here or somewhere else? |
| Hoover: | Naw, somewhere else. |
| Officer: | Huh? |
| Hoover: | Somewhere else. |
| Officer: | Okay, alright, uh, so today you didn't do any today? |
| Hoover: | No, not yet. |

Officer Lindberg then asked to search Hoover's truck, and Hoover consented. One of the two syringes in the pink box in Hoover's truck contained a liquid which later tested positive for methamphetamine. Hoover was charged with possession of methamphetamine and possession of drug paraphernalia.

Before trial, the State filed a notice of intent under I.R.E. 404(b) to introduce the recorded conversation (quoted above) between Officer Lindberg and Hoover. In response, Hoover filed a motion in limine, arguing that the recording was improper character or propensity evidence,

2

which violated I.R.E. 404(b), and also that the recording was unfairly prejudicial under I.R.E. 403. At the hearing on the motion, the district court excluded a majority of the recording about Hoover's prior methamphetamine use under I.R.E. 404(b), but the court ruled the State could admit the last two lines where Officer Lindberg asked, "so today, you didn't do any today?" and Hoover responded "no, not yet."

Thereafter, the State produced to Hoover the redacted version of the recording it intended to offer into evidence at trial. This redacted recording included an additional statement Hoover made about his wife but that had not been the subject of the State's notice of intent, the motion hearing, or the district court's ruling:

| | |
|---|---|
| Officer: | So today, you didn't do any today? |
| Hoover: | No, not yet. |
| Officer: | Basically, (unintelligible) |
| Hoover: | (Unintelligible) |
| Officer: | Okay. So -- |
| Hoover: | This is going to be all bad right now, because my wife is a teacher. And she doesn't even know. |

Hoover raised his concerns about this additional statement being included in the State's proposed redacted recording during a pretrial hearing. At that hearing, Hoover objected to the admissibility of the statement about his wife's lack of knowledge. Although Hoover did not identify any specific evidentiary rule, he argued "the only thing [Hoover] could possibly be referencing [in the statement was] his admission to using [methamphetamine] the prior day." The district court disagreed, finding that Hoover's statement "could be referencing a lot of things including the fact that his wife doesn't know that he hasn't used [methamphetamine] today." As a result, the district court ruled the additional statement was admissible.

At trial, the State admitted evidence that the syringes were found inside the pink box sitting in plain view in Hoover's truck with the passenger door open and the driver's side window down and that the pink box had presumably been in the truck the entire seven hours Hoover was working on the truck. In defense, Hoover did not dispute these facts. Instead, Hoover testified that the pink box was not his; he did not place it in his truck; and he had not noticed it because he was too busy working on the truck's front end. Hoover explained anyone could have placed the syringes in the truck, which had been parked at Baird's residence for two weeks, and that he simply chose the wrong day to work on the truck.

3

The State also relied on the recording of Hoover's statements that he had "not yet" taken methamphetamine that day and that his wife "doesn't even know." On direct examination, Hoover attempted to explain his statement that he had "not yet" used methamphetamine:

Q. Why would you say that to the officer?
A. Well, personally, I was under a lot of stress. That was the first time I have ever had a gun pointed at me and yelled orders to get on the ground. To be honest, I don't--I am not sure why I said that, but I do remember saying that.

Also on direct examination, Hoover attempted to explain his statement about his wife's lack of knowledge:

Q. And you go on to say in that audio recording something to the effect of, "This is all bad, and my wife doesn't need to know about this." Why did you say that?
A. Well, like I stated, my wife is a teacher. And at that time--at the time of the questioning, I figured that I was arrested and my picture was going to be up on a website. And, personally, I thought that it was going to damage her reputation with embarrassment because her husband was in jail, and I didn't want her to find out that way. I would rather have told her myself.
Q. And--so when you say she doesn't need to know about this, you're talking about being arrested?
A. Yes, I was talking about being arrested and my picture put on the Ada County website.

During closing arguments, the prosecutor used an analogy of a missing powdered donut and his three-year-old son with powdered sugar on his face. The prosecutor argued that it was not reasonable to believe the boy did not eat the missing powdered donut and that "it [was] not reasonable to believe that the meth user wasn't going to use the methamphetamine ready to be used . . . ." Hoover objected to the prosecutor's reference to Hoover as a "meth user." During a side bar (which the district court later summarized on the record), the district court considered the objection as a motion for a mistrial. The court denied the motion, concluding that the phrase "meth user" was a "fair argument" and that the State was "commenting on the evidence" and making "inferences that can be drawn from the evidence."

The jury found Hoover guilty of both possession of methamphetamine and possession of drug paraphernalia. Hoover timely appeals.

4

# II.

## ANALYSIS

### A. Admissibility of Evidence

Hoover argues the district court erred by admitting his statement about his wife's lack of knowledge in violation of I.R.E. 403.[1] Rule 403 governs the exclusion of relevant evidence on the grounds of prejudice and provides a court may exclude evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues or misleading the jury. A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Hoover argues that his statement about his wife's lack of knowledge is "clearly a reference" to his excluded statements about his prior methamphetamine use and "getting high with his friends" and that the district court abused its discretion by admitting the statement about his wife because "the statement was inaccurate, misleading, and confusing" "in its altered context" and improperly inferred Hoover was a "habitual methamphetamine user." We disagree. Hoover's statements that he had not yet used methamphetamine that day and that his wife did not know do not clearly infer Hoover was a "habitual methamphetamine user," as Hoover argues. Rather, Hoover's statement about his wife's lack of knowledge could give rise to several

---

[1] When Hoover challenged the admissibility of his statement about his wife's lack of knowledge, he did not specifically identify the nature of his objection. On appeal, Hoover references the statement as "irrelevant" for the first time, and he also generally cites once to I.R.E. 404(b) in his appellate brief. Hoover, however, makes no argument on appeal that the statement about his wife's knowledge is irrelevant or somehow improper character or propensity evidence under I.R.E. 404(b). For this reason, we decline to consider whether the statement was irrelevant under I.R.E. 402 or violated I.R.E. 404(b). *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling party waives issue on appeal if argument is lacking). Hoover did, however, specifically raise an objection under I.R.E. 403 in his motion in limine generally challenging the recording's admissibility. Thus, we consider his challenge under I.R.E. 403.

possible meanings with different inferences. As the district court noted, "[Hoover] could be referencing a lot of things including the fact that his wife doesn't know that he hasn't yet used today."

Further, the redaction of Hoover's statements about his prior drug use did not create confusion about the meaning of his statement regarding his wife's lack of knowledge and to what he was referring. Rather, the statement was already inherently ambiguous--even in the recording's complete context. Indeed, this ambiguity allowed Hoover to explain at trial that the statement meant he was concerned about his wife learning about his arrest, not about his prior drug use.

Hoover offers no argument to support his assertion the district court abused its discretion by failing to perceive the issue as one of discretion, by acting outside the court's discretionary boundaries or inconsistently with applicable legal standards, or by not exercising reason. Accordingly, we cannot conclude the district court abused its discretion by admitting Hoover's statement about his wife's lack of knowledge.

Moreover, even if the district court abused its discretion, the error was harmless. In the event of an incorrect evidentiary ruling, this Court will only grant relief if the error affects the defendant's substantial right. *State v. Shackelford*, 150 Idaho 355, 363, 247 P.3d 582, 590 (2010). Whether an error affected substantial rights depends on a host of factors, including among others, the overall strength of the prosecution's case. *Id.* at 366, 247 P.3d at 593. If a substantial right is not affected, any error is harmless. *Id.* at 363, 274 P.3d at 590. To establish harmless error, the State must prove beyond a reasonable doubt the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010).

Based on the overall strength of the State's evidence in this case, Hoover's statement about his wife's lack of knowledge did not contribute to the jury's guilty verdict. The State's proof included uncontested evidence that Hoover was working on his truck for seven hours at Baird's residence before the warrant's execution; the truck's door and window were open; two syringes protruded in plain view from the pink box in the truck; and Hoover stated he had "not yet" used methamphetamine that day. Regardless of how the jury may have interpreted Hoover's statement about his wife's lack of knowledge, the State's evidence proves beyond a

reasonable doubt that this statement's admission did not contribute to the jury's guilty verdict. Consequently the error, if any, was harmless.[2]

**B.      Motion for Mistrial**

Hoover argues the district court erred by denying his motion for a mistrial based on the State's reference to Hoover in closing argument as a "meth user." In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). The threshold inquiry is whether the State introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993). The right to due process does not guarantee a defendant an error-free trial, but rather a fair one. *Id.* at 58, 855 P.2d at 895. Consequently, error is not reversible unless prejudicial. *Id.*

Closing argument's purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). In closing argument, the parties are afforded considerable latitude to fully discuss the evidence,

---

[2]      While we address the parties' arguments on appeal, we note a significant fact in the record that neither party addressed. At trial, Officer Lindberg testified to the substance of Hoover's statements on the redacted recording without objection, and then the prosecutor offered the redacted recording into evidence stating, "I am going to have the bailiff show you what's premarked as State's Exhibit 1. I believe defense is stipulating to foundation on this. . . ." In response, defense counsel stated "We will stipulate to the *admissibility* of this exhibit." (Emphasis added.) Immediately thereafter, the redacted recording was played for the jury. Based on defense counsel's stipulation to admissibility, Hoover appears to have conclusively waived the issue of whether the redacted recording was admissible.

their respective standpoints, and the inferences the jury should draw from the evidence. *State v. Miller*, 165 Idaho 115, 136, 443 P.3d 129, 150 (2019). "Considerable latitude, however, has its limits, both in matters expressly stated and those implied." *Phillips*, 144 Idaho at 86, 156 P.3d at 587. For example, "[a] closing argument may not misrepresent or mischaracterize the evidence, unduly emphasize irrelevant facts introduced at trial, [or] refer to facts not in evidence." *Id.* (citations omitted). "[A]ppeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible." *Id.* at 87, 156 P.3d at 588.

During closing arguments in this case, the prosecutor argued "it [was] not reasonable to believe that the meth user wasn't going to use the methamphetamine ready to be used . . . ." On appeal, Hoover argues the prosecutor's reference to him as "the meth user" improperly urged the jury to draw "impermissible inferences" that Hoover was guilty based on his character or propensity as a "meth user." We disagree. As the district court ruled, the phrase "meth user" was a "fair argument" based on the inferences the jury could draw from the evidence, including an inference from Hoover's statement that he had not yet used methamphetamine that day. This statement arguably suggested Hoover intended to use methamphetamine later in the day. As such, the State's use of the phrase "meth user" was a comment on the evidence and an inference the jury could reasonably draw from it. For these reasons, the district court did not err in denying Hoover's motion for a mistrial.

## C.    Cumulative Error Doctrine

Finally, Hoover also contends that the cumulative error doctrine applies and requires a reversal of his convictions. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine, however, is a finding of more than one error. *Id*. Hoover has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

## III.

## CONCLUSION

The district court did not abuse its discretion by admitting Hoover's statement about his wife's lack of knowledge. Further, the district court did not err in denying Hoover's motion for a mistrial. Accordingly, we affirm Hoover's judgment of conviction.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

8